Thank you. Good morning, Your Honors. Paul Shelton, Counsel for Appellant Jesus Landeros-Morales. And I'll try to reserve about a minute and a half for rebuttal. Your Honors, the short summary here is that the District Court ruling denying the motion to dismiss should be reversed because Mr. Landeros-Morales was eligible for 212C relief. Such relief was also plausible. At the very least, a remand to the District Court is necessary because the District Court apparently misunderstood or misread some example cases that were cited regarding the plausibility of relief when a non-citizen has a drug distribution conviction. And there was a contradiction between the two courts' orders on certain factional findings. So at the very least, remand is appropriate. But I do believe, based on the record before the court, that the ruling can be reversed outright. I'd actually like to start, it may be a bit unorthodox, but with what I'll call the cross-appeal issue that the government raised about the eligibility of 212C. The District Court found that Mr. Landeros-Morales was eligible for 212C relief, and the government contests that. Essentially, the government argues, citing United States v. Vidal-Mendoza, that an immigration judge need not anticipate future changes in the law. But the undisputed fact is that there was no change in the law in this case. In Vidal-Mendoza, at the time the non-citizen there pled guilty to statutory rape, he would not have been eligible for voluntary departure because it was an aggravated felony. Four years later, the Ninth Circuit decided a case that held that certain statutory rape convictions may not qualify as an aggravated felony. And the Ninth Circuit recognized that that was a sharp departure from prior rulings. So there was, in fact, a change in the law. And the court held in Vidal-Mendoza's case that the immigration judge did not err in finding that he was not eligible for voluntary departure. That contrasts to... No, go ahead, Your Honor. I was about to ask how it's different from what happened here. That contrasts directly to this case and to the case that the District Court relied on, which was Leon Paz, which I'll describe first. In Leon Paz, the non-citizen pled guilty to burglary in 1995 and received a four-year sentence. At the time, he would have been eligible for 212C relief because burglary was not an aggravated felony and there was a five-year sentence requirement. In 1996 and 1997, Congress changed both of those. They made burglary an aggravated felony and they eliminated the five-year sentence. And the court specifically held in that case the immigration judge did err in finding Leon Paz was not eligible for 212C relief because those changes had not applied retroactively. And at the time he was convicted, he was eligible. That's identical to the facts in this case. At the time Mr. Landoros Morales pled in 1988 to drug distribution in federal court, he got an eight-year sentence. He did not plead guilty. He went to trial, Your Honor, so he was convicted. It is a distinction, but I don't think that distinction matters for purposes of the legal finding. He was convicted in 1988 of drug distribution offense in federal court and sentenced to eight years. There's no dispute that at the time he was convicted, he was eligible for relief. But at the time... Are you saying more generically that in the case of the case here, retroactivity intervened? In other words, that at the time he pled guilty and went to trial, he was eligible. Then the statute said he wasn't eligible. The procedure said he was eligible. So back to stage one, i.e. he was eligible, and therefore that's to be treated as if he was always eligible. And in the other cases, you don't have this retroactivity. Essentially, Your Honor, yes. That's the difference in that the government relies on a case where a defendant was not eligible and a subsequent change in the law made him possibly eligible. Here, the defendant was eligible, and a change in the law that was not retroactive did not change his eligibility. Which was purportedly retroactive, but it was later determined not to be retroactive. So there was a period in which it was retroactive, which was the period in which he was advised, right? At the time he was advised, it was understood to be retroactive. I think understood is the appropriate term. This court, and no court to my knowledge, had ever held it was retroactive. So the Ninth Circuit did not change the law. We did hold that just a couple years later in Salmonego-Miraz, right? There was a board decision saying it was retroactive, which we endorsed a couple years later. I guess my question is, does due process really require the IJ to look not just into the future to the next Ninth Circuit decision, which would have been consistent with what the IJ did, but to look beyond that, you know, another ten years to the fact that the law is going to change again in the future? Your Honor, I think the dispute is whether the law changed. My reading of the Ninth Circuit cases is that the Ninth Circuit ultimately clarified in Tau of Ur-Fursano that the law never changed, that it was never retroactive. And the intervening decisions were essentially to the contrary. Yes, Your Honor. It was, Your Honor. And I think there is an argument, frankly, that the court may not be in a position to reach the eligibility question. The United States didn't formally cross-appeal it. It's obviously been briefed and argued. It's not a cross-appeal. Well, it's a different grounds than what the underlying motion is. It's not a cross-appeal. Correct. With respect to plausibility, again, I think the district court made two decisions that, frankly, on the record, don't make sense. Number one, the district court said that Mr. Landeros-Morales cited only one example of where a 212c relief was found when there's a drug distribution offense, and that's factually not true. Does your disagreement turn primarily on the fact that the district judge found that he had actually had many criminal convictions and you say, well, no, he didn't prove that this guy was really the same guy? Is that central to your argument? It's central, but it's not the only issue, Your Honor, because the drug distribution… …and by the government, then there is no parallel case. I'm sorry, Your Honor, I had trouble hearing the end of your question, but I understood what Your Honor is asking. If all of those convictions are properly attributed in, is there any parallel case in which anybody has gotten relief with that number of convictions? No, Your Honor. Frankly, we don't have a record to support that. Our argument is, one, the district court in its initial order on the motion essentially found that there wasn't evidence to support that. The district court specifically held the record before the court is that prior to his federal drug conviction, he had almost 20 years of lawful domicile and lawful residence. That contradicts, that's a factual finding, that any of those aliases, those criminal histories, those immigration histories were applicable. Two months later, with no change whatsoever in the factual record, the court reached a different conclusion. So we have contradictory factual findings between the two orders. Right, but the court also said that just considering the 1988 trafficking offense alone, which, for example, Jellicle and cocaine sold for $30,000, that that was not outstanding equities. What was the error there? Your Honor, I think the error there is that the court specifically said that we only cited one case showing that distribution and 212c relief are compatible when we in fact cited three. So I think it's fair to say the district court did not adequately consider those cases and that argument because it said only one when we cited factually three in our brief involving distribution and relief being plausible. I think it calls into question the analysis of the court that it either missed or misread those cases. Right, but I mean, we can read the case and I don't think the cases have circumstances that are as serious as the ones here. There are some differences between those cases that make it hard to see how this person would have been entitled to this discretionary relief, just given the nature of the offense. And, Your Honor, that's a determination for the court to make. In my opinion, I think the negative equities of those cases are comparable, and I think the positive equities that Mr. Landeros-Morales had are comparable, and in some instances greater than some of those non-citizens. And that's what we argued to the court below as to why relief was plausible comparing to those cases. Unless Your Honors have any questions at this time, I would reserve the remainder for rebuttal, as the court may have some questions after the government's argument. Mr. Burson. Thank you, Your Honors. Richard Burson, representing Apelli United States in this matter. May it please the court, I would like to start out by sort of framing the question that the district court was answering when it issued its order, because the question for the district court is not whether it's plausible that Mr. Landeros-Morales would have been granted 212C relief in his removal hearing. It's whether Mr. Landeros-Morales has met his burden to show that it would have been plausible that he would have been afforded relief at his removal hearing. And here, the district court had before it, from pretrial services and from the government, which the government had pulled from the defendant's immigration file, a pretty serious criminal history, including just in the immigration history alone, several instances where the defendant was apprehended while smuggling people across the southern border, attempting to enter unlawfully. But they're all under different names, and so what link, I just couldn't tell what link came to those cases. So he was, according to the histories before the district court, using various aliases, one of which he was still using in these proceedings. One of the reports... What led you to think that this was the same guy? Was it photos? Was it... What was it? Was it DNA? Was it fingerprints? Was it... So my understanding is that probation pulls theirs from criminal databases, which do utilize fingerprints from prior arrests and make comparisons throughout the database. Immigration uses a similar system, and so all these records were obtained directly from the defendant's A file, his alien file, and some of the records were quite old. There was also, as noted in the district court's order, some cross-use of aliases. At the government's excerpts at page 8, there's a picture on one of the apprehension records that... And again, it's a dated picture, but I don't think there's any mistaking that it is the defendant pictured in that report. It compares quite favorably to the picture on his current pre-sentencing report, even though it's from, I believe, 1982. And importantly here, when faced with these reports from two independent parties, one probation services and the other immigration, the defendant below, in attempting to meet his burden to show plausibility, never disputed these accounts. He never disputed that these were his actions or his convictions or his immigration record. The defendant submitted a declaration below. He spoke about having lived in Southern California around the time that most of this was occurring, spoke about his life there, his work history there. Never once did he say, but according to the government, I was smuggling people across the border. That's not true. But according to the government, I was being deported. That's not true. And the defendant had an opportunity to dispute this record, and he never did. Which, given especially the cross-use of aliases, the picture, just kind of left the district court with nothing other than to find that this criminal history and the immigration history was indeed the defendant's. And so the district court did not clearly err in making that finding. And I would like to address what... Well, it didn't exactly make the finding. That's the other thing. It was kind of really now. It's not a very firm finding. In the district court's order dismissing the indictment, the final order, the district court does make references to the criminal history. The district court itself notices the cross... I don't believe... Considering the 1908 trap happening alone, it's not plausible. When his immigration and criminal history from 1975 to 1980 is considered, it is even clearer. But it seems to me to be something short of an actual finding in that regard. I would like to address what the appellant has classified as an inconsistency in a prior order from the district court. The district court in that order found that it was, quote, not until defendant's conviction on March 2nd of 1988, almost a full 20 years after he first gained lawful permanent resident status, that the defendant's, quote, lawful, end quote, unrelinquished domicile in the United States came to an end. That's not an inconsistent statement. That's not referring to criminal history. That's referring to the fact that he did have lawful status in the United States. He had a lawful permanent resident card. And that phrase, lawful, unrelinquished domicile, is referring to 212C eligibility. It's not referring to criminal history. And in the district court's order, it puts the word lawful in quotes. And I think we all know why the district court chose to put the word lawful in quotes when it otherwise had no reason to. It's because the district court itself was indicating that, yeah, his immigration status here in the United States was lawful. His lawful permanent residence had yet to be revoked by immigration or by an immigration judge. But I think the district court's indicating with those quotation marks that the record shows, the only evidence in the record, at least, shows that the defendant was engaged in criminal activity during most of that time. And, again, criminal activity that the defendant has never disputed. He's never once said below, this wasn't me. Immigration has it wrong. This is misidentification. I wasn't the one responsible here. And in the face of these records, without at least making a statement that this isn't me, I don't know how it is the defendant could ever have showed that it was plausible that he would have been afforded relief by the immigration judge if the immigration judge hadn't deemed him statutorily ineligible from the get-go. One more thing before I move on to plausibility, I do want to talk about the cases that were cited by the defendant below for comparison reasons to show that it was plausible he would have been afforded relief. First, none of them had this significant of a criminal history. But even setting that aside, all of these cases were, as the district court put it, possessory offenses. Yes, they had a trafficking element to them, but it was essentially a trafficking element that had not been completed. The defendant, meanwhile, as detailed on the bail report that the district court had access to, the defendant was part of a trafficking conspiracy in which transactions had been completed. It was an ongoing conspiracy. The defendant was an active participant in that conspiracy. Subsequently, I believe a house was raided. A large quantity of firearms and drugs were found. So I do think the cases are differential from the cases cited by the defendant to establish plausibility. I just don't think there's a fair comparison to be made. I would like now to address the statutory eligibility issue, unless any of your honors have any questions regarding the plausibility issue before I move on. Go ahead. Thank you, Your Honor. So I'll use the remainder of my time to address the statutory eligibility issue. You know, Leon Paz was sort of the exception to the general rule that when IJs inform an alien of eligibility for relief or inform them that they are eligible, so long as they're consistent with existing law, there is no error. After all, there cannot be a- This is a very odd situation. It's somewhat, I guess what I'd like to know is how is this different from Leon Paz? Because in both instances, you have this problem of, as I understand it, the fact that there's sort of retroactivity moving back and forth. So at the time he was convicted, he was eligible, and then there was this statute passed, which I guess it wasn't clear whether he was eligible, and then he was held that he wasn't eligible, and then St. Cyr held that he was eligible. And so depending which of those time frames you look at, he was eligible when he pled, and he was eligible under current law. And isn't that really the problem that Leon Paz was dealing with, which is different from the usual situation? No? So Leon Paz, when he pled guilty, two things were true. One, he pled guilty. He negotiated a plea agreement. Two, he- But under our law, that doesn't matter. I'm sorry, Your Honor, could you repeat that? Under our law, applying St. Cyr, it doesn't matter whether he pled or when he tried. Currently, that is correct, Your Honor. Currently, St. Cyr, the Supreme Court case- Okay. Yes, Your Honor. Currently, that is correct. At the time that I.J. made his ruling, though, that was not the case. At the time that I.J. made his ruling, he was bound by BIA precedent matter of AA that said that the law was not retroactive or was, depending how you look at it. But at any rate, the defendant was barred at that time. And again, that was consistent with a subsequent Ninth Circuit decision. And really, it wasn't until 20 years later that the I.J. would have been incorrect. At the time, I don't think it's disputed that the I.J. was applying existing law. And therefore, the government's argument is that the general rule there is that the I.J. did not err. But how is this different than Leon Paz's case? Because in Leon Paz, when he pled guilty, he was not even deportable. Burglary was not an aggravated felony. And even if it had been an aggravated felony, he pled for a sentence of less than five years. And then subsequent to that is when Congress dealt Mr. Leon Paz sort of a double whammy in saying, well, burglary is an aggravated felony. And also, this form of relief that you may have been eligible for when you pled guilty, if you were even deportable, which you weren't, you're no longer eligible for that. Here, the defendant didn't rely on any sort of relief. He didn't rely on the fact that his conviction was not going to make him deportable. And I think really that's the differentiating factor here is that in both Leon Paz and here, they would have both been eligible for 212C relief at the time of the conviction. Well, it's an interesting question, Your Honor, because technically Mr. Leon Paz would not have been eligible for 212C relief because he would not have even been deportable, which is sort of an odd way to look at it. But the point was Mr. Leon Paz was not even at risk of being put into removal proceedings. He pled guilty to an offense that was not a deportable offense at the time he pled. So he was at zero risk of facing deportation or removal, which places him in contrast to this defendant who the minute he was convicted. I mean, the relevant point in which the removal proceedings and the IJ had an obligation to inform him of what the options were. And looking at that time frame, he was in the same position as the person. In other words, the relevant question is what was the obligation of the IJ at the time he was in deportation proceedings to inform him of his options? That's the ultimate question. Yes, Your Honor. So from that time frame, what was the difference between Leon Paz and our petitioner here? I still think that the difference there is that the IJ with Mr. Leon Paz would have, if there were an error, would have doubly erred because he would have found a deportable on offense that had not been deportable when he pled and ineligible for relief that wasn't even at play when he pled guilty. All right. Thank you. Whereas here. The reason is that the IJ shouldn't have to inform somebody of it. You should only have to inform them of the law at the time and you shouldn't have to foresee what was going to happen, which is not an implausible position, but it doesn't distinguish Leon Paz in any way at all. But respectfully, I think that's the government's position, Your Honor, is that it does actually distinguish Leon Paz. Whenever someone says that's our petition, I turn off because that's not an answer. Understood, Your Honor. Okay. You're well of your time. Thank you very much. Thank you, Your Honors. Mr. Sheldon. Quickly, Your Honors. First, the distinction in the law for drug offenses is simple possession versus ones with distribution elements. There isn't a legally substantive difference for possession with intent to distribute versus completed distribution. Second, I believe Judge Berzon referenced St. Cyr. Unfortunately, sometimes it takes courts 10, 15, 20 years to say what the law is correctly. St. Cyr clarified in 1990 the law did not make Mr. Landeros-Morales ineligible. It never retroactively affected him. So that's why the IJ owed a duty to tell him he was eligible, because that's what he was at the time of his removal proceeding. Okay. Thank you both very much. The case of Landeros-Morales, United States v. Landeros-Morales is submitted. We will go to Pedersen, who is our gun board of parole. And just by way of planning, after the next case, Calderon v. Maggio, we will take an eight-minute break.
judges: Berzon, Miller, Bress